## IN THE CIRCUIT COURT OF MARION COUNTY, MISSISSIPPI

**KEYLA GREEN, INDIVIDUALLY, AND ON
BEHALF OF AND FOR THE USE AND BENEFIT
OF THE WRONGFUL DEATH BENEFICIARIES
OF DAUPHINE GREEN**

**PLAINTIFF**

**VS.**

CAUSE NO.: 2015 - 0247 M



SEP 2 1 2015

JANETTE NOLAN, CIRCUIT CLERK
BY _____ D.C.

**SONG HEALTH & REHAB OF COLUMBIA,
LLC d/b/a SONG HEALTH & REHAB OF
COLUMBIA, COVENANT DOVE, LLC,
COVENANT DOVE HOLDING COMPANY, LLC,
ARK MISSISSIPPI HODLING COMPANY, LLC,
RONNIE SIBLEY, UNIDENTIFIED ENTITIES 1-10,
AND JOHN DOES 1-10 (as to the SONG HEALTH &
REHAB FACILITY)**

**DEFENDANTS**

### COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Keyla Green, Individually, and on Behalf of and For the

Use and Benefit of the Wrongful Death Beneficiaries of Dauphine Green, and for her causes of

action against Defendants, states:

### I.   JURISDICTION AND VENUE

1.1     Keyla Green is a surviving child of Dauphine Green and brings this action

individually and on behalf of and for the use and benefit of the wrongful death beneficiaries of

Dauphine Green, and pursuant to Mississippi law.

1.2     Dauphine Green was, at all times material hereto, a resident of Song Health &

Rehab, a skilled nursing facility located at 1506 North Main Street, Columbia, Mississippi 39429

from on or about April 2013 until September 26, 2013.

1.3     Defendant, Song Health & Rehab of Columbia, LLC d/b/a Song Health & Rehab

of Columbia (hereinafter "Song Health" or "Nursing Home Defendants" or "Song Health



**EXHIBIT**

_A_

Defendants") is a business operating in the state of Mississippi with its principal place of business located in Marion County, Mississippi, and that may be served with process to its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or a location where said agent may be found. Song Health was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Song Health.

1.4    Defendant, Covenant Dove, LLC (hereinafter "Covenant Dove" or "Nursing Home Defendants" or "Song Health Defendants") is a Delaware limited liability company operating in the state of Mississippi with its principal place of business located 2723 Summer Oaks Drive, Bartlett, Tennessee 38134, and that may be served with process to its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or a location where he may be found. Covenant Dove was, and remains, a business engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Song Health. Covenant Dove is the owner and operator of Song Health.

1.5    Defendant, Covenant Dove Holding Company, LLC (hereinafter "CD Holding" or "Nursing Home Defendants" or "Song Health Defendants") is a Delaware limited liability company operating in the state of Mississippi, with its principal place of business located at 2723 Summer Oaks Drive, Bartlett, Tennessee 38134, and that may be served with process to its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or a location where said agent may be found. CD Holding was, and remains, a business engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Song Health. CD

Holding is the owner and operator of Song Health.

1.6     Defendant, Ark Mississippi Holding Company, LLC (hereinafter "Ark Mississippi" or "Nursing Home Defendants" or "Song Health Defendants") is a Delaware limited liability company operating in the state of Mississippi, with its principal place of business located at 2723 Summer Oaks Drive, Bartlett, Tennessee 38134, and that may be served with process to its registered agent, CT Corporation System, 645 Lakeland East Drive, Flowood, Mississippi 39232, or a location where said agent may be found. Ark Mississippi was, and remains, a business engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Song Health. Ark Mississippi is the owner and operator of Song Health.

1.7     Ronnie Sibley, Defendant, (hereinafter "Sibley" or "Nursing Home Defendants" or "Song Health Defendants") is a resident citizen of Mississippi, and that may be served with process at 1506 North Main Street, Columbia, Mississippi 39429 or a location where he may be found.

1.8     Defendants, Song Health, Covenant Dove, CD Holding, Ark Mississippi, and Ronnie Sibley are collectively referred to as "Song Health Defendants."

1.9     Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is currently unable to identify despite diligent efforts. Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and treatment of Dauphine Green, during her residency at Song Health. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions or others with respect to the care and treatment of Dauphine Green during

her residency at Song Health.

1.10    Separate Defendants Unidentifed Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts. Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of Dauphine Green during her residency at Song Health. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Dauphine Green during her residency at Song Health.

1.11    At all times material hereto, Defendants owned, operated and/or controlled Song Health & Rehab of Columbia. The actions of each of Song Health Defendants' servants, agents and employees as set forth herein, are imputed to the Song Health Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

1.12    Jurisdiction and venue are proper in Marion County, Mississippi, in that a substantial alleged act or omission occurred and/or a substantial event that caused the injury occurred in whole or in part in Marion County, Mississippi.

## II.    FACTUAL SUMMARY

2.1    Ms. Green began her residency with the Song Health Defendants on or around April of 2013. Ms. Green residency period at Song Health lasted from April of 2013 to September 26, 2013. On September 26, 2013 Ms. Green died as a result of the injuries she suffered at Defendants' facility.

2.2    Defendants were well aware of Ms. Green's medical condition and the care that she required when they represented that they could adequately care for her needs.

2.3    At all times material to this lawsuit, Defendants held themselves out as being:

4

a.      Skilled in the performance of nursing, rehabilitative and other medical support services;

b.      Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

c.      Able to specifically meet the total nursing home, medical, and physical therapy needs of Dauphine Green and other residents like her; and,

d.      Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

2.4      The Song Health Defendants failed to discharge their obligations of care to Dauphine Green. As a consequence thereof, Dauphine Green suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death. The scope and severity of the recurrent wrongs inflicted upon Dauphine Green while under the care of the facility accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma, which includes, but is not limited to:

a. Decubitus ulcers;

b. Infections, including, but not limited to, urinary tract infections, wound infections, and sepsis;

c. Malnutrition and weight loss;

d. Dehydration;

e. Medication errors;

f. Cognitive decline;

g. Poor hygiene;

h. Death; and

i. other injuries to be proven in litigation.

2.5     The Defendants caused Ms. Green to suffer serious and significant injuries from the providence of improper care. Ms. Green suffered from decubitus ulcers (reaching statge 4), unexplained injuries, infections, malnutrition, weight loss, dehydration, medication errors, cognitive decline, poor hygiene, pneumonia, urinary tract infections, wound infections, sepsis and death. Ms. Green became septic, and on September 26, 2013, Ms. Green died as a result of the Defendants acts and omissions. Ms. Green's death certificate indicates that severe sepsis caused her death. All of the above identified injuries, as well as the conduct specified below, caused Ms. Green to lose her personal dignity and her death to be preceded by extreme and unnecessary pain, degradation, anguish, and emotional trauma.

2.6     The wrongs complained of herein were of a continuing nature, and occurred throughout Dauphine Green's stay at Defendants' facility.

2.7     Plaintiff alleges that on all of the occasions complained of herein, Dauphine Green was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

2.8     Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Dauphine Green.

2.9     Defendants have joint and several liability for the actions complained of herein

because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE SONG HEALTH DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.10    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.1-2.9 as if set forth herein.

2.11    Defendants owed a duty to residents, including Dauphine Green, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

2.12    Defendants owed a duty to residents, including Dauphine Green, to exercise reasonable care in providing care and services in a safe and beneficial manner.

2.13    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of Dauphine Green.

2.14    The negligence of Defendants includes, but is not limited to, the following acts and omissions:

a.      The failure to provide adequate pressure reduction, failure in turning and repositioning, failure in providing adequate skin care, and failure to prevent and treat pressure sores in Ms. Green;

b.      The failure to provide Dauphine Green with adequate fluid intake to prevent dehydration;

b.      The failure to provide adequate nutrition, prevent weight loss, and provide appropriate nutritional interventions;

c.      The failure to provide Dauphine Green with adequate and appropriate hygiene

7

care, including the failure to bathe him daily after each incontinent episode so as to prevent urine and fecal contact with skin for an extended period of time;

d.  The failure to provide and ensure that Dauphine Green received adequate hygiene and sanitary care to prevent infection, including, urinary tract infections and wound infections;

e.  The failure to properly assess Ms. Green's state resulting in the progression of her infections and other conditions;

f.  The failure to provide the minimum number of staff necessary to assist the residents, including Dauphine Green, with their needs;

g.  The failure to provide adequate supervision for Dauphine Green to protect her from injuries, including unexplained injuries within the facility;

h.  The failure to provide appropriate therapies to avoid Ms. Green's preventable cognitive and social decline;

i.  The failure to provide proper custodial care, and infection control and to prescribe and administer proper medication to prevent Dauphine Green existing medical conditions to worsen to the point of becoming life-threatening;

j.  The failure to provide adequate supervision of Dauphine Green to prevent her from being injured within the facility;

k.  The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Dauphine Green's condition;

l.  The failure to provide sufficient numbers of qualified nursing personnel to meet the total needs of Dauphine Green;

m.  The failure to increase the number of nursing personnel to ensure that Dauphine

8

Green:

1.    Received timely and accurate care assessments;

2.    Received prescribed treatment, medication, and diet;

3.    Received necessary supervision; and

4.    Received timely nursing and medical intervention due to a significant change in condition.

n.    The failure to provide nursing personnel sufficient in number to ensure that Dauphine Green attained and maintained her highest practicable level of physical, mental and psychosocial well-being;

o.    The failure to provide adequate supervision to the nursing staff so as to ensure that Dauphine Green received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Dauphine Green;

p.    The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Dauphine Green received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

q.    The failure to provide a nursing staff that was properly staffed, qualified, and trained;

r.    The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint

9

regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility of any interested person;

s.     The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

t.     The failure to provide care, treatment, and medication in accordance with physician's orders;

u.     The failure to provide a safe environment;

v.     The failure to maintain medical records on Dauphine Green in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.     The diagnosis of Dauphine Green;

2.     The treatment of Dauphine Green; and

3.     The assessment and establishment of appropriate care plans of care and Treatment.

w.     The failure to protect Dauphine Green from harm within the facility.

x.     The failure to provide proper pressure sore relief, interventions, and prevention.

2.15     A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Dauphine Green.

2.16     As a direct and proximate result of the negligence of Defendants as set out above, Dauphine Green suffered injuries, as set forth herein all of which required hospitalization, medical treatment, and death, and all of which required Ms. Green to incur significant hospital

and medical expenses.

2.17    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE AGAINST THE SONG HEALTH DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.18    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-2.17, as if fully set forth herein.

2.19    Separate Defendants owed a duty to residents, including Dauphine Green, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

2.20    Separate Defendants owed a duty to residents, including Dauphine Green, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

2.21    Separate Defendants owed a duty to assist all residents, including Dauphine Green, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

2.22    Separate Defendants failed to meet the standard of care and violated their duty of care to Dauphine Green through mistreatment, abuse, and neglect. The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

11

a.   The failure to provide appropriate nursing care and interventions to prevent the development and worsening of pressure sores on Ms. Green's body, including the failures in providing adequate pressure reduction, failures in turning and repositioning, failures in skin care and treatment, and failures in wound care and treatment;

b.   The failure to provide proper custodial care and infection control and to prescribe and administer proper medication to prevent Dauphine Green's existing medical conditions to worsen to the point of becoming life-threatening;

c.   The failure to properly assess Ms. Green's state resulting in the progression of her infections, including her urinary tract infections, wound infections and sepsis;

d.   The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Dauphine Green;

e.   The failure to monitor and document significant changes in Dauphine Green's condition;

f.   The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Dauphine Green changed;

g.   The failure to implement and ensure that an adequate nursing care plan for Dauphine Green was followed by nursing personnel;

h.   The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

i.   The failure to provide Dauphine Green with adequate and appropriate

12

observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

j. The failure to provide care, treatment, and medication in accordance with physician's orders;

k. The failure to properly and timely notify a physician of significant changes in Dauphine Green's physical condition;

l. The failure to maintain medical records on Dauphine Green in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1. The diagnosis of Dauphine Green;

2. The treatment of Dauphine Green; and

3. The assessment and establishment of appropriate care plans of care and treatment.

m. The failure to adequately and appropriately monitor Dauphine Green and recognize significant changes in her health status;

n. The failure to respond to significant signs and symptoms of change in the condition of Dauphine Green;

o. The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medical aides to meet the total needs of Dauphine Green;

p. The failure to increase the number of nursing personnel to ensure that Dauphine Green:

1. received timely and accurate assessments;

2. received prescribed treatment, medical and diet;

3. received necessary supervision;

4. received timely nursing and medical intervention due to a significant

change in condition.

q.      The failure to provide nursing personnel sufficient in number to provide

proper treatment and assessment of Dauphine Green and other residents in

order to protect Dauphine Green's skin integrity and to prevent the

formation of pressure sores, lesions, rashes, and infections;

r.      The failure to respond to significant signs and symptoms of change in the

condition of Dauphine Green;

s.      The failure to provide nursing personnel sufficient in number to ensure

that Dauphine Green attained and maintained her highest level of physical,

mental, and psychosocial well-being;

t.      The failure to provide adequate supervision to the nursing staff so as to

ensure that Dauphine Green received adequate and proper nutrition, fluids,

therapeutic diet, sanitary care treatments, medications, safety, and skin

care to prevent the formation of pressure sores and lesions, infection and

sufficient nursing observation of Dauphine Green;

u.      The failure to adequately assess, evaluate, and supervise nursing personnel

so as to ensure Dauphine Green received appropriate nursing care, in

accordance with Defendants' policy and procedures manual, and the

statutorily  mandated  regulations  implemented  by  the  Mississippi

14

Department of Health and its agents, including the Office of Licensing and

Certification;

v.     The failure to provide a nursing staff that was properly staffed, qualified

and trained;

w.     The failure to provide and ensure an adequate nursing care plan as well as

revisions based on the needs of Dauphine Green;

x.     The failure to implement and ensure that an adequate nursing care plan for

Dauphine Green was followed by nursing personnel;

y.     The failure to adopt adequate guidelines, policies, and procedures for

documenting, maintaining files, investigating, and responding to any

complaint regarding the quantity of resident care, the quality of resident

care, or misconduct by employees, irrespective of whether such complaint

derived from a state survey agency, a resident of said facility, an employee

of the facility or any interested person;

z.     The failure to take reasonable steps to prevent, eliminate, and correct

deficiencies and problems in resident care;

aa.    The failure to properly assess Dauphine Green for the risk of injury and

development of pressure sores, skin tears, lesions, and infections;

bb.    The failure to provide Dauphine Green with adequate and appropriate

nursing care, treatments, and medication for infections;

cc.    The failure to provide care, treatment, and medication in accordance with

physician's orders;

dd.    The failure to properly and timely notify Dauphine Green's attending

15

physician of significant changes in Dauphine Green's physical condition, to wit: the development of pressure sores, infections, injuries, and persistent, unresolved problems relating to the care and physical condition of Dauphine Green resulting in unnecessary pain, agony, and suffering on the part of Dauphine Green;

ee. The failure to provide Dauphine Green with adequate and appropriate assessment for fluid management to prevent dehydration;

ff. The failure to maintain an adequate and appropriate fluid maintenance program;

gg. The failure to ensure that Dauphine Green received adequate assessment of her nutritional needs;

hh. The failure to provide a safe environment;

ii. The failure to maintain medical records on Dauphine Green in accordance with acceptable professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

    1. the diagnosis of Dauphine Green;

    2. the treatment of Dauphine Green; and

    3. the assessment and establishment of appropriate care plans of care and treatment;

jj. The failure to adequately and appropriately monitor Dauphine Green and recognize significant changes in her health status; and

kk. The failure to properly notify the family of Dauphine Green of significant

16

changes in her health status.

2.23    A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of Dauphine Green's injuries and death. Dauphine Green's injuries and death were foreseeable to these Defendants.

2.24    Defendants' conduct in breaching the duties owed to Dauphine Green was grossly negligent, willful, wanton, malicious and reckless.

2.25    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Dauphine Green suffered injuries and also suffered extreme pain, suffering, mental anguish, and death all of which required medical treatment.  As a result, Ms. Green incurred significant medical expenses.

2.26    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF DAUPHINE GREEN AGAINST THE SONG HEALTH DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.27    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 2.26, as if fully set forth herein.

2.28    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the

17

safety of others, including Dauphine Green.  Specifically such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Dauphine Green, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Ms. Green.

2.29    The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Dauphine Green, includes, but is not limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

1.    The failure to provide basic nursing services to prevent the formation of pressure sores on the body of Dauphine Green and to prevent the worsening of pressure sores on the body of Dauphine Green;

2.    The failure to provide Dauphine Green with necessary and adequate continence care and assistance with toileting;

3.    The failure to provide Dauphine Green with adequate and appropriate hygiene care, including the failure to bathe her daily after each incontinent episode so as to prevent urine and fecal contact with his skin for an extended period of time, thereby preventing pressure sores from developing and progressing;

4.    The failure to provide and ensure that Dauphine Green received adequate hygiene and sanitary care to prevent pressure sores from developing and progressing;

5.    The failure to provide clean bed linens to Dauphine Green as needed to prevent urine and fecal contact for an extended period of time;

6.    The failure to provide even the minimum number of staff necessary to

assist the residents with their needs;

7.  The failure to provide adequate supervision for Dauphine Green to prevent unexplained injuries within the facility;

8.  The failure to provide proper custodial care, and wound care and to prescribe and administer proper medications to prevent Dauphine Green's existing medical conditions to worsen to the point of becoming life-threatening;

9.  The failure to properly assess Ms. Green's state resulting in the progression of her infections;

10. The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Dauphine Green's condition;

11. The failure to protect Dauphine Green from receiving injuries,

12. The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nursing assistants, and medication aides (nursing personnel) to meet the total needs of Dauphine Green;

13. The failure to increase the number of personnel to ensure that Dauphine Green:

I.    Received timely and accurate care assessments;

II.   Received prescribed treatment, medication, and diet;

III.  Received necessary supervision; and

IV.   Received timely intervention due to a significant change in

condition.

14. The failure to provide nursing personnel sufficient in number to ensure that Dauphine Green attained and maintained her highest level of physical, mental and psychosocial well-being;

15. The failure to provide adequate supervision to the nursing staff so as to ensure that Dauphine Green received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Ms. Green;

16. The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Dauphine Green received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

17. The failure to provide nursing staff that was properly staffed, qualified, and trained;

18. The failure to provide and ensure an adequate nursing care plan based on the needs of Dauphine Green;

19. The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Dauphine Green changed;

20. The failure to implement and ensure that an adequate nursing care plan for Dauphine Green was followed by nursing personnel;

21.   The failure to adopt adequate guidelines, policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person;

22.   The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care;

23.   The failure to properly and timely notify Dauphine Green's attending physician or hospital of significant changes in Ms. Green's physical condition, specifically: infections, pneumonia, pressure sores, unexplained injuries, malnutrition, dehydration, poor hygiene, disfigurement, and persistent and unresolved problems relating to the care and physical condition of Dauphine Green resulting in her pain, agony, suffering and death;

24.   The failure to provide a safe environment;

25.   The failure to maintain medical records on Dauphine Green in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematical organized with respect to:

      i.   The diagnosis of Dauphine Green;

      ii.   The treatment of Dauphine Green; and

      iii.   The assessment and establishment of appropriate care plans of

care and treatment.

26. The failure to adequately and appropriately monitor Dauphine Green and recognize significant changes in her health status;

27. The failure to protect Dauphine Green from harm within the facility;

28. The failure to respond to significant signs and symptoms of change in the condition of Dauphine Green;

29. The failure to properly notify a doctor upon significant changes in Dauphine Green's condition; and

30. The failure to provide Dauphine Green with adequate and appropriate observation and examination for skin breakdown so as to timely and adequately intervene to prevent the formation of pressure sores on her body.

2.30   As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Dauphine Green, she suffered injuries and death as set herein, all of which required Ms. Green to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which resulted in death.

2.31   WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FOUR: STATUTORY SURVIVAL CLAIM AGAINST THE SONG HEALTH DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.32    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 2.31, as if fully set forth herein.

2.33    As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including Dauphine Green, Ms. Green suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress.  As a result, Dauphine Green incurred significant hospital and medical expenses.

2.34    As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Dauphine Green died on September 26, 2013, thereby incurring funeral, burial, and other related expenses.

2.35    WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for Dauphine Green's death, including, but not limited to medical expenses and other related expenses incurred as a result of Separate Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FIVE: STAUTORY WRONGFUL DEATH CLAIM AGAINST SONG HEALTH DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.36     Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 2.35, as if fully set forth herein.

2.37     As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Dauphine Green, Defendants caused the death of Dauphine Green.

2.38     As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Dauphine Green suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment. Dauphine Green died on September 26, 2013, thereby incurring funeral, burial and other related expenses.

2.39     As a result of the death of Dauphine Green, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

2.40     WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to Dauphine Green's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Dauphine Green including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all

24

other relief to which Plaintiff is entitled.

### COUNT SIX: INDIVIDUAL LIABILITY AND LIABILITY PURSUANT TO PIERCING THE CORPORATE VEIL AGAINST COVENANT DOVE, CD HOLDING, ARK MISSISSIPPI AND JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.41    Plaintiff re-alleges and incorporates that allegations in paragraphs 1.01-2.40, as if fully set forth herein.

2.42    Separate Defendants, Covenant Dove, CD Holding, and Ark Mississippi owned and operated Song Health Defendants. These named Defendants as corporate officers, owners, and operators, directly participated and/or authorized the commission of the negligent, grossly negligent, and fraudulent acts as articulated above, and are thus, personally liable for the torts named herein.

2.43    Said Defendants engaged in the flagrant of corporate formalities by the defendant corporation and its principals and committed fraud and other equivalent misfeasance. These Defendants used Song Health to perpetuate a fraud upon Plaintiff. Defendants were intent on obtaining Plaintiff's funds for their own personal use with no intention of performing their duties and used Song Health Defendants to improperly shield themselves from personal liability. Song Health Defendants were not properly capitalized, were not properly staffed, and did not have adequate supplies, as well as had assets that were intermingled. Said Defendants abused the corporate entities of Song Health Defendants to perpetuate fraud and evade contractual and tort responsibility.

2.44    Defendants intentionally engaged in common law fraud and knowingly concealed or failed to disclose material facts, even though Defendants knew or reasonably should have known that because of the surrounding circumstances that Dauphine Green and her family were ignorant of the articulated material facts and did not have an equal opportunity to discover the

truth.   Specifically, Defendants either personally or through their agents or employees misrepresented the material facts either by omission or affirmative statements that they were willing to, and would, provide the proper care, treatment and services to Dauphine Green, even though Defendants know that they would provide as little care and treatment and services as possible in order to maximize Defendants' profits at the expense of Ms. Green.   Further, Defendants made the misrepresentations with the intent to induce Dauphine Green and her family to take some action: specifically, to admit and not remove Ms. Green from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were no qualified to render care or services in accordance with the law during Ms. Green's residency beginning with her admission to Song Health in April of 2013 through her death, on September 26, 2013.   As a proximate cause of Defendants' concealment and failure to disclose, these adverse material facts, Dauphine Green suffered injuries as set forth above.

2.45   WHEREFORE, based on such conduct of Separate Defendants as set of above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement, and death in an amount to be determined by the jury, plus costs and all relief to which Plaintiff is entitled by law.

### COUNT SEVEN: BREACH OF CONTRACT CLAIM AGAINST SONG HEALTH DEFNDANTS AND CLAIM OF THIRD PARTY BENEFICIARY AGAINST SAID PARTIES, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

2.46   Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 2.45 as if fully set forth herein.

2.47    Song Health & Rehab was supported, managed, owned and operated by Covenant Dove, CD Holding and Ark Mississippi. These parties' duties were set out in various written and oral agreements. Said agreements were implemented at Song Health's facility in Columbia, Mississippi by Defendants personnel.

2.48    The terms of the agreements required the parties to provide support, operations, management, oversight, and guidance to Song Health employees. The Defendants' failure to properly perform said tasks pursuant to the referenced agreements rendered Defendants in breach of contract. The Agreements were entered into in order to provide a safe environment for Song Health's residents, including Ms. Green. Ms. Green being a resident of Song Health and recipient of the services provided by Defendants, was a third party beneficiary of said Agreements. Plaintiff was to receive a direct benefit of Defendants proper provision of services and oversight pursuant to the referenced agreements. By the terms of the Agreement, Defendants acquired a legal obligation or duty to Ms. Green, the third person beneficiary. As third party beneficiary, Plaintiff is entitled to sue for Defendants breach of the terms of the referenced Agreements. Said Breach caused Plaintiff the Damages set forth herein.

2.49    By contract, Defendants, therefore, agreed to express obligations of duties, including the duties named herein which related to support and oversight of the management, care and treatment which was to be provided to residents, such as Dauphine Green.

2.50    Defendants failed to perform their duties promised via the Agreements by failing to provide adequate support services, failing to provide proper training and policies, failing to ensure that the policies and procedures were followed, by failing to adequately provide Quality Assurance Personnel, Consultants, Managers, and Coordinators, and by other management failures in order to ensure that Ms. Green was receiving care and treatment, particularly as it

27

related to prevention, care and treatment of pressure ulcers, catheter care, and prevention of infection.

2.51    When Song Health admitted Ms. Green to its nursing home, it promised to provide services in accordance with the standard of care to Ms. Green 24 hours a day/7 days a week, all of which was to be in compliance with the state and federal regulations relating to nursing homes such as Song Health. Song Health breached its contractual obligations to Ms. Green as they failed to meet the standard of care, causing damages to Ms. Green as herein set forth.

2.52    Also, as explained herein, by contract, Defendants duties flowed directly down, through Song Health, to Ms. Green. That is, Ms. Green was a third-party beneficiary of the contracts, including Agreements between Song Health and Defendants Covenant Dove, CD Holdings, and Ark Mississippi. The management, care, and treatment of Ms. Green, as a resident of Song health, was with the intent of the purpose of the Agreements and, as such, Ms. Green is a third-party beneficiary and was to be a recipient of the benefits of the Agreements.

2.53    Additionally, Song Health had a substantial and articulate interest in the welfare of Ms. Green in respect to the subject of the Agreements.

2.54    Covenant Dove, CD Holdings, and Ark Mississippi owed a duty to Song Health to manage and support Song Health pursuant to the terms of the contracts entered into between the parties. It was reasonably foreseeable that if the parties failed to fulfill their obligations to Song Health by providing the express services promised in the Agreements, that residents of Song Health, such as Ms. Green, would suffer injuries and death. The breach in the standard of care of the persons providing "support" services, managerial services, and all Quality Assurance Personnel and Coordinators caused or contributed to Ms. Green's injuries and death.

28

2.55    Covenant Dove, CD Holdings, and Ark Mississippi knew or should have known and/or it was foreseeable that Ms. Green would suffer injuries and death if they failed to perform the duties promised to Song Health via the agreements.

2.56    WHEREFORE, Defendants breached their duties, which were set forth in the Agreements, and such breach caused or contributed to Ms. Green's injuries and death. Plaintiffs are entitled to all damages allowed by law for breach of contract, including breach of contract as it relates to Ms. Green's third party beneficiary status.

## COUNT EIGHT: CLAIM OF DUTY OF COVENANT DOVE, CD HOLDINGS AND ARK MISSISSIPPI TO DAUPHINE GREEN BASED ON AGENCY

2.57    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 2.56 as if fully set forth herein.

2.58    Defendants Covenant Dove, CD Holdings and Ark Mississippi were the agents of Song Health and, as such agent they negligently failed to fulfill its duties owned to third persons, such as Dauphine Green.

2.59    In their failure to fulfill their duties to Ms. Green, they are liable for their negligence, in the performance of their duties to such third persons, such as Dauphine Green.

2.60    As articulated herein, Defendants controlled the management, operation and activities of Song Health to such an extent that it amounted to a duty of care owed to third persons, such as Dauphine Green.

2.61    As articulated herein, Defendants breached the standard of care, by and through its acts of omission and commission, which caused or contributed to the injuries and death of Dauphine Green.

2.62     Defendants owed an obligation to use its control, "support", and decision-making

not to cause injury or death to those third persons who were residents of Song Health, including

Dauphine Green.

2.63     Defendants violated their obligation/duty relating to their control of Song Health,

which violation of its obligation/duty caused or contributed to the injuries and death of Dauphine

Green.

2.64     WHEREFORE, based on the conduct set forth above of Separate Defendants,

Plaintiff asserts a claim for judgment for compensatory and punitive damages against these

Separate Defendants including, but not limited to, medical expenses, physical pain and suffering,

mental anguish, disability, humiliation, disfigurement and death in an amount to be determined

by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### PRAYER FOR RELIEF

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact

in the case be tried to a jury.

WHEREFORE, the Plaintiff, Keyla Green, Individually, and on behalf of and for the use

and benefit of the Wrongful Death Beneficiaries of Dauphine Green, and for her causes of

action, prays for judgment against all Defendants, as follows:

1.     For damages to be determined by the jury, in an amount exceeding the minimum

jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and

damages sustained;

2.     For all general and special damages caused by the alleged conduct of Defendants;

3.     For the costs of litigating this case;

4.     For punitive damages sufficient to punish Defendants for their egregious conduct

and to deter all Defendants from repeating such atrocities; and

     5.     For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the 18th day of September, 2015.

PLAINTIFF, KEYLA GREEN, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE AND
BENEFIT OF THE WRONGFUL DEATH
BENEFICIARIES OF DAUPHINE GREEN

BY: _____
     R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129B South President Street
Post Office Box 23785
Jackson, Mississippi 39225-3875
Tel:    (601) 949-5080
Fax:    (601) 949-5538